FERNANDO SIERRA BERDECÍA, COMMISSIONER OF LABOR OF PUERTO RICO, ETC., Petitioner and Appellant, *v.* SAN MIGUEL FERTILIZER CORPORATION, ETC., Respondents and Appellees.

No. 10628.    Argued April 1, 1952.—Decided April 18, 1952

*Joaquín Gallart Mendía* and *Domingo Candelario,* counsel for the Department of Labor, appellant.    *Clemente Ruiz Nazario* and *F. L. San Miguel* for appellees.

MR. JUSTICE MARRERO delivered the opinion of the Court.

On behalf and for the benefit of certain employees, the Commissioner of Labor filed a claim for wages [1] which was submitted to the lower court by virtue of a stipulation which textually copied reads:

"Now come both parties herein, respectively represented by the undersigned attorneys, and to this Hon. Court respectfully state:

"1. That the following facts are reciprocally considered as admitted:

"(*a*) That both respondents jointly operated, on the dates referred to in the complaint which gave rise to this suit, and still operate, a branch in the city of Mayagüez, Puerto Rico, engaged in the distribution and sale of fertilizers and livestock feed, respectively, manufactured by the respondents in San Juan,

---

[1] It is alleged in the complaint that the employees mentioned therein worked in the respondent corporations' establishment in Mayagüez, which is engaged in the distribution at wholesale of goods produced by the latter, under the provisions of Mandatory Decree No. 16, and that the amount of $549.47 is due them.    Judgment in this amount is prayed for, plus a like amount as penalty.

Puerto Rico, exclusively to *colonos*, other farm growers, aviculturists and dairymen of said district of Mayagüez, to be used by said *colonos*, farm growers, aviculturists and dairymen in their respective farms and activities and not for resale purposes.

"(b) That the four employees on whose behalf and for whose benefit the complaint herein was filed, worked for the respondents in said establishment, in the capacities or activities, during the periods and hours and for the wages and rates alleged in the complaint, taking part in the sales described in the foregoing paragraph.

"(c) That the controversy between the parties is a question of law, namely, the construction of Mandatory Decrees Nos. 8 and 16 regarding sales at retail and at wholesale, respectively, inasmuch as while the petitioner claims that the sales described in the preceding paragraph '*a*' represent wholesale trade regulated by Decree No. 16, the other party is of the opinion that said sales are at retail and, therefore, regulated by Decree No. 8.

"3. Wherefore both parties consider that the hearing of evidence is unnecessary and have agreed and stipulated to submit, as they hereby submit, the instant case for final decision by this Court, on the basis of the question of law raised, all this without prejudice to any respective rights they might exercise against such decision, in conformity with current legislation on this subject, which rights they reserve."

In view of the aforesaid stipulation and based on an elaborate opinion, said court entered judgment dismissing the complaint in all its parts, without costs.

Petitioner appealed and now maintains that the court *a quo* erred "in concluding and deciding that the branch jointly operated by the respondents in Mayagüez, where the employees in whose behalf the complaint was filed rendered their services, is a retail business and as such regulated by Mandatory Decree No. 8, and not a wholesale business consequently regulated by Mandatory Decree No. 16."

The only question to be decided is, thus, whether the work done by the employees in whose behalf the complaint was filed is covered by Mandatory Decree No. 8, as the respondents

claim, or Mandatory Decree No. 16, as alleged by the petitioner.[2]

In discussing the error assigned appellant insists that his contention is that the phrase "commercial establishments" includes agricultural and industrial establishments and, consequently, *colonos*, other farm growers, dairymen, and aviculturists, purchasers of the fertilizers and livestock feed of the respondents' branch, to be used in their respective farms and activities; and that, both decrees taken together, he believes that wholesale trade means those sales made to purchasers acquiring the merchandise for profit, either through resale or industrial consumption, retail trade being limited to direct conveyances to personal consumers. We disagree. The definitions given by the very decrees involved of the words "retail" and "wholesale" compel us to disagree. We shall see:

Article A(1) of Mandatory Decree No. 8 of the Minimum Wage Board provides:

"*DEFINITIONS*.

"For the purpose and compliance of this decree, unless otherwise construed from its text, the following words shall have the meaning and scope given below:

"1. *Definition of the Business:*—The business of selling at retail, to which this Decree applies, is the business defined as follows:

"The Business of Selling at Retail comprises, without contemplating any limitation whatsoever, any act, process, operation, work or service, necessary, incidental or related to retail sales or direct conveyances to consumers, of any kind of commodities or articles, for money, promises or thing of value, whenever such sales or conveyances originate, are transacted or consummated in any establishment or place wholly or partially dedicated to such purposes, or whenever made outside such establishment or place in its name or for its benefit. The

---

[2] Mandatory Decree No. 8 fixes a minimum weekly wage of not less than $12 in the first zone, $10 in the second and $8 in the third; whereas Mandatory Decree No. 16 fixes a minimum wage of not less than 50¢ per hour.

businesses, industries, occupations, or branch thereof which in Decree No. 6 of this Board, applicable to hotels, restaurants, bars, and soda fountains (which Decree shall not be impaired in any manner whatsoever) are subject to regulation or excepted from its scope, shall, however, be excluded."

And Article I(A) and (B) of Mandatory Decree No. 16 of the same Board provides as follows:

"DEFINITIONS.

For the purpose and compliance of this order, unless otherwise construed from its text, the following underscored words and phrases shall have the meaning and scope given below:

"A—*Wholesale Trade* embraces any establishment, enterprise or agency engaged in the sale of merchandise to retailers, commercial establishments or to other wholesalers. It includes wholesalers, agents, brokers, commission agents, and sales branches of manufacturing enterprises. It covers the processes of buying, selling, warehousing, transporting and any other activity connected therewith. It shall not include, however, establishments having two or less employees partially engaged in any of the processes listed in this definition. These establishments shall be subject to the provisions of the mandatory order applicable to the activity carried on jointly with wholesale trade. Neither does it embrace any subdivision of an establishment whose employees are totally engaged in retail trade.

"B—*Sales Branch of a Manufacturing Enterprise* shall mean a subsidiary establishment of a manufacturing enterprise which does not operate in the same building where the manufacturing processes are performed and which is engaged in the distribution at wholesale of goods produced by said manufacturing enterprise."

From the stipulation filed by the parties it clearly follows that the branch jointly operated by the respondents in the city of Mayagüez is engaged in "the distribution and sale of fertilizers and livestock feed, respectively, manufactured by the respondents in San Juan, Puerto Rico, exclusively to *colonos*, other farm growers, aviculturists and dairymen of said district of Mayagüez, to be used by said *colonos*, farm

growers, aviculturists and dairymen in their respective farms and activities and not for resale purposes."

If pursuant to the definition of the word "retail" given by Mandatory Decree No. 8, a retail business comprises direct conveyances to consumers, it is only logical to infer that the distribution and sale by respondents' branch of fertilizers and livestock feed to *colonos*, farm growers, etc., to be used by the latter in their respective farms and activities, and not for resale, undoubtedly constitute retail trade. The definition given by Mandatory Decree No. 16 of the phrase "wholesale trade" reaffirms us in that opinion, since, as we have seen, such a trade embraces "any establishment, enterprise or agency engaged in the sale of merchandise to retailers, commercial establishments or to other wholesalers," and inasmuch as "sales branch of a manufacturing enterprise shall mean a subsidiary establishment of a manufacturing enterprise which does not operate in the same building where the manufacturing processes are performed and which is engaged in the distribution at wholesale of goods produced by said manufacturing enterprise."

Respondents' branch, as appears from the stipulation, is not engaged in the sale of merchandise to retailers, commercial establishments or to other wholesalers, nor in the distribution "at wholesale" of goods produced by a manufacturing enterprise. On the contrary, it is engaged, we repeat, in the distribution and sale of fertilizers and livestock feed manufactured by the respondents in San Juan, exclusively to *colonos*, farm growers, etc., to be used by the latter in their own farms and activities.

In the light of such clear and precise definitions given by the decrees themselves, we need not resort to dictionaries, encyclopedias or adjudged cases for the definition of the words "retail" and "wholesale." We think that the question is so clear that, in our judgment, a superficial reading of the definitions given by the respective decrees is sufficient to con-

vince anyone that the petitioner is not right in claiming that the work done by the employees of the respondents is regulated by the former decree and not by the latter.

The judgment appealed from will be affirmed.

